MADDOX, Justice.
The issue in this ease is whether a third party, who claims to have suffered property damage as a result of a substantial leak in an underground gasoline storage tank, can recover compensation for the damage from the Alabama Underground and Aboveground Storage Tank Trust Fund under the provisions of Ala.Code 1975, § 22-35-5.
The facts are undisputed. William Sanders and his wife, Lillie Sanders, owned and operated a gasoline service station/groeery store in Rehobeth, Alabama. On June 30, 1989, the Sanderses’ business was rendered unfit for any business purpose as a result of a substantial gasoline leak from an underground storage tank. The underground storage tank was owned by Slocomb Oil Company, and the gasoline in it was purchased irom Slocomb Oil Company. Slocomb Oil Company is registered with the Alabama Department of Environmental Management as an owner of three underground storage tanks. The Sanderses sued Douglas Laye, Tucker McLaughlin, and Slocomb Oil, alleging that negligence, wantonness, and trespass on their part had caused the leak and the resulting harm to their business. Subsequently, the Sanderses amended their complaint to add Leigh Pegues, the director of the Alabama Department of Environmental Management (“the director”), as the legal representative of the Trust Fund.[1] The Sanders-es’ claim against the Trust Fund was a third-party claim made pursuant to Ala.Code 1975, § 22-35-5.
On October 2, 1991, the trial court entered a judgment against Slocomb Oil Company in accordance with a consent agreement; the trial judge specifically stated in an amended order dated October 15,1991, that nothing in the final judgment “shall be construed as determining the liability of the Alabama Storage Tank Trust Fund (AUST Trust Fund), nor shall it be construed as binding on the Fund, nor shall it determine the damages, if any, which the Fund shall pay in connection with this case.”
The director, as legal representative of the Trust Fund, moved for a summary judgment, arguing that the Trust Fund was not obligated to pay third-party claims, because, he argued, the Environmental Protection Agency (“EPA”) had extended the compliance dates for tank owners to meet the financial responsibility requirements for third-party claims. Stated in legal terms, the director took the position that § 22-35-4(3) set indemnification limits for third-party claims against the Trust Fund and that § 22-35-4(3) tied these indemnification limits for third-party claims to that of tank owners complying with the financial responsibility requirements as set forth in Subtitle I of the *649 Resource Conservation and Recovery Act. The trial court entered a summary judgment in favor of the director and made that judgment final pursuant to the provisions of Rule 64(b), Ala.R.Civ.P. The Sanderses appeal. We agree with the director’s position, and we affirm.
To decide the legal issue in this case, we must interpret several acts of the Alabama legislature, especially as those acts relate to provisions of federal laws and regulations concerning underground storage tanks, the subject of this action.
The Hazardous and Solid Waste Amendments of 1984 (HSWA) extended and strengthened the provisions of the Resource Conservation and Recovery Act (RCRA), a federal act. HSWA created Subtitle I, which provides for the development and implementation of a regulatory program concerning underground storage tanks. Section 9003(a) of Subtitle I requires the administrator of the EPA to promulgate requirements for petroleum release detection, prevention, and correction as necessary to protect human health , and the environment.
The Superfund Amendments and Reau-thorization Act of 1986 (SARA) amended sections 9003(c) and (d) of Subtitle I to mandate that the EPA establish financial responsibility requirements for underground storage tank owners and operators in order to assure the costs of corrective action and third-party liability caused by accidental releases from underground storage tanks.
On April 17, 1987, the EPA proposed a rule setting out financial responsibility requirements for underground storage tanks containing petroleum. On October 26, 1988, after analyzing the comments on the proposed rule, the EPA promulgated financial responsibility requirements applicable to owners and operators of underground storage tanks containing petroleum, under section 9003(c) and (d) of the RCRA. 40 C.F.R. § 280.93. The rule establishes requirements for demonstrating financial responsibility for taking corrective action and compensating third parties for bodily injury and property damage caused by accidental releases arising from the operation of underground storage tanks containing petroleum. The EPA carefully considered where to allow flexibility in the financial responsibility program while ensuring adequate protection for covering the costs of petroleum underground storage tank releases. Based primarily upon their ability to comply, the EPA adopted a phased-in schedule for compliance for owners and operators of underground storage tanks. For instance, petroleum marketers owning or operating 1,000 or more underground storage tanks and non-marketers with more than $20,000,000 in tangible net worth were required to comply with the financial requirements on or before January 24, 1989, three months after the date the rule was promulgated. Small marketers, such as Slocomb Oil Company, were scheduled for compliance by April 26, 1990, because the EPA recognized that they would rely primarily on state assurance funds. However, on May 2, 1990, the EPA extended this compliance date to April 26, 1991, and later extended it to December 31, 1993. This schedule provided time for the development of state assurance programs. The EPA recognized that state funds could provide an important means for compliance with financial responsibility requirements at the onset of the program, and the EPA encouraged the development of such funds. Such a mechanism was already in place in Alabama. The Alabama legislature had established the Alabama Underground and Aboveground Storage Tank Trust Fund (“Trust Fund”), Ala.Code 1975, §§ 22-35-1 to 22-35-13, on May 3, 1988, as a means of allowing owners and operators of petroleum underground storage tanks to meet the financial responsibility requirements of Subtitle I.
The Sanderses argue that the director has attempted to incorporate into the Trust Fund an exemption that is incompatible with the intent of the Trust Fund. Section 22-35-1 states the legislative intent: *650 The Sanderses argue that the EPA’s financial responsibility requirements were intended only to establish a limit for third-party claims and were never meant to exempt the Trust Fund from liability.
*649 “The legislature intends for this chapter to provide evidence of financial responsibility for owners and operators of underground and aboveground storage tanks under the Resource Conservation and Recovery Act, subtitle I, the Superfund Amendments and Reauthorization Act of 1986 and other federal laws.”
*650 Pursuant to the provisions of Subtitle I of the RCRA, the administrator of the EPA is authorized to promulgate financial responsibility regulations for owners of underground storage tanks and may establish an amount of coverage for particular classes or categories of underground storage tanks. 42 U.S.C. § 6991b(d)(5)(D). Owners and operators of petroleum underground storage tanks must demonstrate financial responsibility for taking corrective action and for compensating third parties for bodily injury and property damage caused by accidental releases arising from the operation of underground petroleum storage tanks; because Slocomb Oil Company owned three underground storage tanks, the applicable financial responsibility requirement is $500,000. See 40 C.F.R. § 280.93(a)(1). On December 23, 1991, pursuant to authority granted it by Subtitle I of the RCRA, the EPA extended the compliance deadline regarding financial responsibility requirements for underground storage tank owners who own a total of fewer than 12 tanks. Pursuant to 40 C.F.R. § 280.91, as amended, tank owners in this category were given until December 31,1993, to satisfy federal responsibility requirements. Accordingly, relying on the statutory language of § 22-35-5, Ala.Code 1975, the director argues that the amount necessary for Slocomb Oil Company to satisfy underground storage tank owner financial responsibility requirements of Subtitle I of the RCRA is zero. The director contends that, inasmuch as the limit of liability of the Trust Fund with respect to third-party claims is set by statute at the amount necessary to satisfy the federal financial responsibility requirement, and because there is no federal financial responsibility requirement applicable to Slocomb Oil Company, the Trust Fund has no liability with respect to the claims asserted against it in this ease. The Sanderses, on the other hand, argue that although owners and operators with fewer than 12 tanks were not required to meet this requirement until December 31, 1993, this does not exempt the Trust Fund from third-party claims.
The Sanderses contend that § 22-35-4(3), Ala.Code 1975, is intended to set the limits of liability for the Trust Fund. Section 22-35-4(3), as originally enacted, stated as follows:
“The indemnification limit of the fund with respect to satisfaction of third party claims shall be that which is necessary to satisfy underground storage tank owner financial responsibility requirements of the Resource Conservation and Recovery Act, U.S.Code.”
In support of their argument, the Sanders-es point out that at or about the time the Trust Fund was created, the EPA had not yet promulgated financial responsibility requirements. Therefore, they contend, the Trust Fund did not set any specific limit for third-party claims, because these limits had not yet been established by the EPA. The EPA promulgated the financial responsibility requirements on October 26, 1988. The Alabama legislature had established the Trust Fund on May 3, 1988, adopting by reference the limits that were later established by the EPA.
The Sanderses contend that the 1993 amendment of § 22-35-4(3) further demonstrates an intent on the legislature’s part not to make the Trust Fund’s liability depend upon compliance dates. In 1993 the Alabama legislature amended § 22-35-4(3) to read as follows:
“The indemnification limit of the fund with respect to satisfaction of third party claims shall be the following amounts:
“a. For owners or operators of motor fuels underground storage tanks that are located at petroleum marketing facilities, or that handle an average of more than 10,000 gallons of motor fuels per month based on annual throughput for the previous calendar year; $1,000,000 per occurrence.
“b. For all other owners or operators of motor fuels underground and above-ground storage tanks; $500,000 per occurrence;
“c. For owners or operators of 1 to 100 motor fuels underground and aboveground *651 storage tanks, $1,000,000 annual aggregate; and
“d. For owners or operators of 101 or more motor fuels underground and above-ground storage tanks, $2,000,000 annual aggregate.”
In the 1993 amendment, the Sanderses argue, the legislature simply incorporated the RCRA’s specific financial responsibility requirements as the Trust Fund’s limits for third-party claims. The Sanderses also point to the fact that absent from both the pre-amendment statute and the 1993 amended statute is any provision stating that the limits apply only after the compliance date.
The Sanderses argue that the 1993 amendment is remedial in nature and thus should govern this case. In Dickson v. Alabama Machinery & Supply Co., 18 Ala.App. 164, 165, 89 So. 843, 844, cert. denied, 206 Ala. 698, 89 So. 922 (1921), the Court of Appeals defined remedial statutes as those “which impair no contract or vested right, and do not disturb past transactions, but preserve and enforce the right and heal defects in existing laws prescribing remedies.” The Sanderses maintain that § 22-35-4(3) deals only with the remedies available for third-party claims. They insist that the 1993 amendment “heals” a defect in the prior statute by explicitly stating the limits for third-party claims.
The director insists that the Trust Fund is not a remedial statute because, he argues, it does not create a cause of action or remedy and does not alter any existing cause of action or remedy and any prospective third party. The director argues that the 1993 amendment does nothing more than establish an indemnification limit for small marketers who are subject to third-party claims. We agree.
The Trust Fund was established by the legislature as a state assurance fund. It is a mechanism that allows all owners and operators of underground storage tanks to meet the financial responsibility requirements of Subtitle I. We agree with the director that the legislature intended to tie the indemnification limits for eligible third-party claims against the Tank Trust Fund to those tank owners and operators in compliance with the financial responsibility requirements of Subtitle I of the RCRA. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL and INGRAM, JJ., concur.

. James W. Warr, Pegue's successor as director, has been substituted as a party in this case.